## A05A1509. CROMARTIE v. THE STATE.
(620 SE2d 413)

MILLER, Judge.

Moments after she left a convenience store where she had been accosted for shoplifting, Carolyn Cromartie struck and killed a pedestrian while driving her van. Cromartie was later convicted of vehicular homicide, driving under the influence (DUI), shoplifting, and other crimes. She now appeals on the grounds that the evidence was insufficient, and that the trial court erred when it admitted similar transaction evidence and when it denied her motions for change of venue and mistrial. We find no error and affirm.

Viewed in the light most favorable to the jury's verdict, the evidence shows that on October 19, 2002, an ex-employee of a Family Dollar store in Sylvester saw Cromartie stuff socks, underwear, and a jacket inside her own jacket. The ex-employee informed the manager, who confronted Cromartie, obtained the merchandise, and asked her to leave the store. Cromartie bought a candy bar and left the store. Moments later, as she made a left turn out of the store parking lot onto Highway 82, she struck the victim, who had been attempting to cross the street in a wheelchair. He was thrown from his wheelchair and died a few days later.

After Cromartie told the first officer at the scene to "go F [your]self," he read her the implied consent warning and administered a horizontal gaze nystagmus (HGN) test, which showed that she was under the influence of drugs. When he asked Cromartie whether she was on drugs, she replied that she was, but refused to specify the type of drug. To the officer's request that she submit to a blood test, she responded, "F you, get that test from two days ago when I had that other wreck where they took my blood." The results of the blood test arising from this October 17, 2002 incident later returned positive for cocaine. A crack pipe was recovered on the ground on the driver's side of Cromartie's car.

Before trial, the State gave notice of its intention to introduce similar transaction evidence concerning (1) Cromartie's guilty plea to a vehicular homicide in which she killed two people while driving under the influence; (2) three shoplifting convictions concerning thefts of food, women's clothes, and toiletries from stores in Sylvester; and (3) two other DUI incidents, including the October 17, 2002 wreck, both of which involved Cromartie's use of cocaine and alcohol. After argument from both sides, the trial court admitted all of this evidence on the grounds that each one was "sufficiently similar" to the circumstances of the case-in-chief that they went to Cromartie's "motive, scheme, bent of mind, [and] course of conduct."

Cromartie was found guilty of vehicular homicide, DUI, reckless driving, shoplifting, and other charges, and was sentenced to 15 years to serve. Her motions for new trial were denied.

1. Cromartie first contends that the evidence was insufficient to support the verdict as to vehicular homicide, DUI, and reckless driving, and that her motion for directed verdict was improperly denied. We disagree.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. *Williams v. State*, 261 Ga. App. 793, 794 (1) (584 SE2d 64) (2003). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Our methods are the same "whether the challenge arises from the overruling of a motion for directed verdict or the overruling of a motion for new trial based upon alleged insufficiency of the evidence." *Humphrey v. State*, 252 Ga. 525, 527 (1) (314 SE2d 436) (1984).

In making out its charges of vehicular homicide, the State had the burden of proving that Cromartie was driving under the influence to the extent that it was "less safe" for her to drive at the time she struck the pedestrian, that she was driving at an excessive rate of speed at that time, and that the collision caused the latter's death. See OCGA §§ 40-6-391 (a) (2) (defining DUI); 40-6-393 (a) (defining vehicular homicide).

(a) Admissible evidence tending to prove that Cromartie was under the influence of drugs at the time she struck the victim with her car included (1) her refusal to submit to a blood test, (2) her admission that she was under the influence, (3) the crack pipe recovered at the scene, and (4) her failure of the HGN test. See OCGA § 40-5-67.1 (b) (2) (defendant's refusal to submit to test may be admitted as evidence at trial); *Pendergrass v. State*, 245 Ga. 626, 627 (1) (266 SE2d 225) (1980) (jury properly considered defendant's admission tending to prove the crime charged); *Sieveking v. State*, 220 Ga. App. 218, 219-220 (1) (469 SE2d 235) (1996) (officer's testimony that HGN test results showed impairment was admissible). This same evidence also tended to prove, moreover, that Cromartie was sufficiently under the influence of drugs as to be a "less safe" driver at the time of the accident. *Sieveking*, supra, 220 Ga. App. at 220-221 (3) (evidence competent to prove that driver was "less safe" included both failed HGN test and officer's testimony to that effect). Thus there was evidence sufficient to support the jury's verdict as to DUI. See *Pendergrass*, supra, 245 Ga. at 628 (4); *Sieveking*, supra, 220 Ga. App. at 220-221 (3).

(b) OCGA § 40-6-390 (a) provides that "[a]ny person who drives any vehicle in reckless disregard for the safety of persons or property commits the offense of reckless driving." OCGA § 40-6-180 provides in part that "every person shall drive at a reasonable and prudent speed when approaching and crossing an intersection . . . and when special hazards exist with respect to pedestrians." The determination whether a driver's rate of speed was reasonable under the circumstances is a question for the factfinder. *Hamby v. State*, 256 Ga. App. 886, 887 (1) (570 SE2d 77) (2002); *Phillips v. Howard*, 109 Ga. App. 404, 410 (4) (136 SE2d 473) (1964).

Although there was testimony in this case that Cromartie was not speeding at the time she left the parking lot, it was for the jury to evaluate this testimony in the course of determining whether she was driving recklessly under the circumstances, which included a left turn out of a parking lot into a street that a wheelchair-bound pedestrian was attempting to cross. There was evidence to support the jury's verdict as to reckless driving. See *Hamby*, supra, 256 Ga. App. at 887.

(c) Cromartie also argues that even if she was guilty of DUI and reckless driving, she did not proximately cause the pedestrian's death, since he died of a heart attack a few days after the collision. Again, although there was evidence from the doctor performing the autopsy that the pedestrian suffered from a serious heart condition, the same doctor also testified that the collision "directly and materially contributed" to his death from the heart attack. There was therefore evidence to support the jury's implicit finding that Cromartie's reckless driving was the proximate cause of the pedestrian's death. See *Hood v. State*, 193 Ga. App. 701, 702-703 (1) (389 SE2d 264) (1989) (affirming vehicular homicide conviction when jury's verdict resolved conflicts in evidence as to proximate cause of victim's death).

2. Cromartie next contends that because some of the jurors had heard about the case, the trial court erred when it failed to grant her motion for change of venue. Her brief fails to provide citations to either the record or the law to support this contention, however. We therefore deem this argument abandoned on appeal. Court of Appeals Rule 25 (c) (2), (3); *Gore v. State*, 272 Ga. App. 156 (2) (611 SE2d 764) (2005).

3. Cromartie also argues that the trial court erred when it admitted evidence of similar transactions, including her prior convictions for shoplifting, DUI, and vehicular homicide, and when it did so without making an explicit finding that the probative value of the evidence outweighed its prejudicial effect. We disagree.

Before allowing the introduction of evidence of a similar transaction, a trial court must hold a hearing pursuant to Uniform

Superior Court Rule 31.3. At that hearing, the State must make three showings in order for the evidence to be introduced:

> (1) that it seeks to introduce the evidence for an appropriate purpose; (2) that there is sufficient evidence to show that the accused committed the independent offense or act; and (3) that there is a sufficient connection or similarity between the independent offense or act and the crime charged such that proof of the former tends to prove the latter.

(Citations omitted.) *Kates v. State*, 271 Ga. App. 326, 328-329 (3) (609 SE2d 710) (2005); *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). A trial court's decision to admit similar transaction evidence will be upheld on appeal unless it is clearly erroneous. *Kates*, supra, 271 Ga. App. at 328-329 (3).

The six incidents admitted as similar transactions included three thefts of items from stores located in Sylvester, Worth County, and three instances of driving under the influence, one of which resulted in the deaths of two of her own car's passengers. After a hearing pursuant to Rule 31.3 and *Williams*, the trial court held that these other incidents were "sufficiently similar" so as to shed light on Cromartie's motive, bent of mind, and course of conduct in this case.

Here, the evidence showed that while under the influence of cocaine, Cromartie stole a few items from a Family Dollar store in Sylvester, Worth County; fled the scene in her car; and struck and killed a pedestrian minutes later. The fact that Cromartie had not previously committed these crimes in tandem — shoplifting, DUI, and vehicular homicide in a few minutes' time — cannot forestall the conclusion that the trial court's denial of her motion to exclude the similar transaction evidence was not clearly erroneous. See *Kates*, supra, 271 Ga. App. at 329 (3).

4. Finally, Cromartie contends that the trial court erred when it denied her motion for mistrial after two of the State's witnesses put her character at issue. The convenience store clerk testified that when Cromartie entered the store, she had already been banned from doing so, while the detective testified that he "knew [her] from the past" and "knew she used drugs."

As we have often held, the decision whether to grant a mistrial based on improper character evidence is a matter for the discretion of the trial judge. "In reviewing the trial court's decision, an appellate court may consider the nature of the statement, the other evidence in the case, and the court's and counsel's action in dealing with the impropriety." (Citation omitted.) *Browning v. State*, 236 Ga. App. 893, 894 (2) (513 SE2d 779) (1999).

This testimony concerning Cromartie's propensity for drug use and petty crime was cumulative when considered in the context of other evidence in the case, and especially the similar transaction evidence discussed in Division 3 above. After hearing argument from both sides, the trial court also instructed the jury to disregard the evidence. The defense did not object to the form or content of the instruction given. Thus we cannot conclude that the trial court abused its discretion when it denied Cromartie's motion for mistrial. *Browning*, supra, 236 Ga. App. at 894 (2).

*Judgment affirmed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED AUGUST 11, 2005 —
RECONSIDERATION DENIED AUGUST 24, 2005.

*James M. Walker III*, for appellant.
Carolyn Cromartie, *pro se*.
*C. Paul Bowden, District Attorney, Bradford L. Rigby, Assistant District Attorney*, for appellee.