## S03A1675. SALAHUDDIN v. THE STATE.

(592 SE2d 410)

Sears, Presiding Justice.

Appellant Elijah Salahuddin appeals from his convictions for four counts of felony murder,[1] alleging trial court error in (1) the denial of appellant's motion to bar the trial due to speedy trial violations; (2) the giving of jury instructions; (3) the answering of jury questions during deliberations; and (4) the admission of evidence concerning appellant's prior acts. Having reviewed the record, we conclude that the presumption of prejudice stemming from the State's long delay in bringing appellant to trial is sufficiently rebutted and appellant did not suffer an unconstitutional deprivation of his speedy trial rights. Additionally, while the trial court gave a disfavored jury instruction, our precedent establishes that the instruction does not warrant reversal. There being no merit to appellant's other contentions, we affirm.

The evidence of record was sufficient for reasonable finders of fact to conclude that on December 10, 1995, appellant went to a home where he had previously left his car for repairs and inquired about whether the repairs had been completed. On December 13, 1995, appellant returned to the home with an accomplice and entered through the back door. Inside the home were five men. Appellant confronted the men about his car, then brandished a pistol and shot four of the men, killing them. The fifth man, though shot, escaped through a window. He later viewed a photographic line-up and identified appellant as one of the assailants. Appellant fled to California, where he was arrested in April 1996 on separate, unrelated charges of aggravated assault then pending in Georgia, and extradited.

1. Viewed in a light most favorable to the verdicts, the evidence of record was sufficient for the jury to conclude beyond a reasonable doubt that appellant was guilty of the crimes for which he was convicted.[2]

2. The trial court did not err in denying appellant's motion to bar

---

[1] The crimes occurred on December 13, 1995. Appellant was indicted on May 12, 1998, on four counts each of malice murder, felony murder, and aggravated assault; one count of illegal firearm possession and one count of aggravated battery. Trial was held November 3-6, 2000. Appellant was found guilty of four counts of felony murder, four counts of aggravated assault, one count of aggravated battery and one count of illegal firearm possession. The aggravated assault convictions merged by operation of law and appellant was sentenced to four consecutive life sentences for felony murder, a consecutive sentence of twenty years for aggravated battery and a consecutive sentence of five years for illegal firearm possession. Appellant filed a new trial motion on November 21, 2000, and amended it on April 24, 2003. The motion was denied on April 28, 2003. Appellant timely filed a notice of appeal on May 1, 2003. The appeal was docketed with this Court on July 29, 2003, and orally argued on November 18, 2003.

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

his trial due to speedy trial violations. The crimes occurred in December 1995. At that time, a bench warrant had been issued for appellant charging him with unrelated aggravated assaults. In April 1996, appellant was arrested under an assumed name in California and extradited to Georgia on the unrelated aggravated assault charges. Appellant was tried on the unrelated charges in 1997 and sentenced to 30 years in prison. In May 1998, appellant was indicted for the four murders at issue in this appeal. He filed his motion to bar trial in September 1999 and the motion was denied in June 2000. Trial was held in November 2000.

Speedy trial rights attach at the time of arrest or formal indictment, whichever is earlier.[3] At the time of appellant's indictment for the four murders at issue here, he was already in prison due to separate convictions; hence, no formal "arrest," as that term is understood in our law,[4] took place. Accordingly, we will determine whether appellant's speedy trial rights were violated due to the twenty-five months that elapsed between the time he was indicted for the four murders and the date when his motion to bar trial was denied.

> In *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972), the Supreme Court of the United States identified four factors to be considered by a court in determining whether an accused's constitutional right to a speedy trial had been violated . . . (a) [t]he length of the delay, (b) the reason for the delay, (c) the defendant's assertion of his right, and (d) the prejudice to the defendant. 407 U. S. at 530. The Supreme Court further stated that it regarded none of the factors as either a necessary or sufficient condition to a finding of a deprivation of the right of speedy trial but rather that the factors should be considered together in a balancing test of the conduct of the prosecution and the defendant.[5]

Concerning the prejudice factor, there are "three interests which the speedy trial right was designed to protect, the last being the most important: (a) to prevent oppressive pre-trial incarceration; (b) to minimize anxiety and concern of the accused; and (c) to limit the possibility that the defense will be impaired."[6]

In this case, 25 months is unquestionably a long period to delay

---

[3] *Boseman v. State*, 263 Ga. 730, 731 (438 SE2d 626) (1994).

[4] See Daniel, Georgia Criminal Trial Practice § 2-2 (1999); *Collier v. State*, 244 Ga. 553, 561 (261 SE2d 364) (1979), overruled on other grounds, *Thompson v. State*, 263 Ga. 23 (426 SE2d 895) (1993).

[5] *Washington v. State*, 243 Ga. 329, 330 (253 SE2d 719) (1979).

[6] *Washington*, 243 Ga. at 331; *Boseman*, 263 Ga. at 731.

the prosecution of a case and raises a threshold presumption of prejudice.[7] Regarding the reasons for delay, we note at the outset that nowhere in the record does it show that the State deliberately attempted to delay the trial in order to hamper the defense, a serious abuse that would be weighted heavily against the State.[8] Nonetheless, as found by the trial court, the delay was primarily due to the State's "failure to designate assistant district attorneys who would be dedicated to this case." Hence, this factor must be weighted against the State. However, we also note that appellant did not assert his right to a speedy trial until fifteen months after indictment, which was nine months before the trial court heard pretrial motions. Accordingly, this particular factor, though not dispositive, must be balanced against appellant's interest.

Finally, regarding actual prejudice caused to appellant by the State's delay in bringing this matter to trial, we conclude there was no oppressive pretrial incarceration, as appellant was already in prison due to his conviction for the unrelated aggravated assaults. Nor is there any showing in the record that the delay caused appellant significant anxiety and concern beyond that generally experienced by defendants in his situation.[9] On appeal, appellant urges that his defense was impaired by the delay, as he intended to call a witness who could not be located after "early 2000." This witness, appellant argues, would have strengthened his alibi defense. However, it appears that appellant shares partial responsibility for the loss of this witness, as he waited 15 months after indictment to assert his speedy trial rights. Moreover, the loss of this witness did not prevent appellant from asserting his alibi defense, and we will not speculate as to what impact, if any, she might have had on the defense. Accordingly, we conclude that the presumption of prejudice raised by the State's 25-month delay in bringing this case to trial has been sufficiently rebutted and we find that appellant's defense was not measurably impaired by the delay.

Balancing these factors, we conclude that although the State was negligent in failing to bring appellant to trial in a timely fashion, that consideration is outweighed by the facts that appellant suffered little actual prejudice to his defense, suffered no unduly oppressive pretrial incarceration and waited a significant amount of time before asserting his right to a speedy trial. Hence, the trial court properly ruled that he was not unconstitutionally denied his speedy trial rights.

---

[7] See *Boseman*, 263 Ga. at 732.

[8] See *Barker*, 407 U. S. at 531.

[9] See *Redd v. State*, 261 Ga. 300 (404 SE2d 264) (1991); LaFave and Israel, Criminal Procedure, Vol. 2, § 18.2, p. 410 (1984).

3. The trial court's instruction to the jury on the law of alibi included the following:

> The evidence presented with respect to time and place must be such as to reasonably exclude the possibility of the presence of the defendant at the scene of the alleged offense. Presence of the defendant at the scene of the crime alleged or the defendant's involvement as a co-conspirator or a party to the crime is an essential element of the crimes set forth in this indictment and the burden of proof rests upon the state to prove such beyond a reasonable doubt.

Appellant urges that the first sentence of this excerpt from the trial court's charge improperly suggested that he carried the burden of proof as to his alibi defense. It is, of course, axiomatic that no burden is ever placed upon a criminal defendant to establish innocence.[10] Absent harmless or invited error, such charges are deemed erroneous and are subject to reversal.[11] We do not evaluate jury charges in isolation, but rather consider them as a whole to determine whether there is a reasonable likelihood the jury improperly applied a challenged instruction.[12]

Regarding the alibi charge at issue here, however, we have previously held that the charge "would be correct and better without" the first sentence quoted above,[13] but have concluded that no reversible error exists because "the final sentence is clear in instructing that the burden of proof rests completely with the [S]tate."[14] Accordingly, we reject appellant's claim that the charge improperly shifted the burden of persuasion to him.

4. The trial court did not abuse its discretion in answering the jury's question during deliberations. While deliberating, the jury sent a note to the judge asking: "If the jury is not certain which perpetrator shot a victim, but the [perpetrator] . . . was present, are they guilty by association?" In response, the trial court recharged the jury on the law of party to a crime. Contrary to appellant's contention, "our case law contains no general mandate requiring the trial courts, when responding to a jury's request for a recharge on a particular [issue], to also recharge on all principles asserted in connection with that [issue]."[15] Moreover, " 'where the jury requests further instructions upon a par-

---

[10] *Bridges v. State*, 268 Ga. 700, 703 (492 SE2d 877) (1997).
[11] *Bridges*, 268 Ga. at 703.
[12] *Bridges*, 268 Ga. at 703.
[13] *Chapel v. State*, 270 Ga. 151, 157 (510 SE2d 802) (1998).
[14] *Chapel*, 270 Ga. at 157; *Swindle v. State*, 274 Ga. 668, 671 (558 SE2d 385) (2002).
[15] *Duffie v. State*, 273 Ga. 314, 316 (540 SE2d 194) (2001).

ticular phase of the case, the court in [its] discretion may recharge them in full, or *only upon the point or points requested.*'"[16]

5. The trial court did not err in admitting evidence of prior similar acts committed by appellant. Over appellant's objection, the trial court admitted evidence of the aggravated assaults for which appellant had been previously convicted. A proper limiting instruction was given to the jury at the time of the evidence's admission. These assaults stemmed from a shoot-out involving several persons in an Atlanta nightclub parking lot. At trial, two witnesses testified that in the parking lot, appellant got into an altercation with a group of individuals, lifted his shirt to reveal a gun, then started firing shots. Having reviewed the record, we conclude that the evidence was admitted for a proper purpose, i.e.: to show a connection or similarity between the prior act and the four murders at issue here.[17] Both incidents involved aggressive conduct by appellant that rapidly escalated and appellant's use of a handgun to resolve his differences with others. Appellant had been convicted for these prior acts, hence (as he concedes) there was sufficient evidence that he committed them.[18] Finally, while the prior act evidence was harmful to appellant's defense, we conclude its probative value, which showed a specific course of conduct and particular pattern of behavior,[19] was not outweighed by its prejudicial effect.[20]

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 2, 2004.

*Brian Steel*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Anna E. Green, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Frank M. Gaither, Jr., Assistant Attorney General*, for appellee.

---

[16] *Duffie*, 273 Ga. at 316 (emphasis in original).
[17] See *Williams v. State*, 261 Ga. 640, 642 (409 SE2d 649) (1991).
[18] See *Williams*, 261 Ga. at 642.
[19] See *Williams*, 261 Ga. at 642.
[20] See *Williams*, 261 Ga. at 642.