A09A2097. LEE v. THE STATE.
(684 SE2d 348)

ELLINGTON, Judge.

A Columbia County jury found Jerry Lee guilty beyond a reasonable doubt of aggravated sexual battery, OCGA § 16-6-22.2 (b), of his nine-year-old daughter. Following the denial of his motion for a new trial, Lee appeals, contending that the evidence was insufficient and that the trial court erred in accepting an inconsistent verdict and in denying his motion for a new trial based on the ineffective assistance of counsel. For the reasons explained below, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows the following. The victim testified that, while her mother was away from the house getting food for dinner on May 11, 2005, Lee called the victim into his and his wife's bedroom and asked her to comb his hair. Lee starting talking to the victim about keeping herself clean, locked the bedroom door, and then told the victim to pull down her pants and underwear. As the victim lay on a couch with her legs apart, Lee began touching and rubbing the victim's genitals while he continued talking about keeping clean. Lee took the victim into the bathroom, had her stand with her legs apart, had the victim put personal lubricant on her genitals, and then inserted his lubricated finger into the victim's vagina. Lee did not wear examination gloves. The victim told Lee that it hurt. The next day, the victim told her mother (Lee's wife) what happened.

Lee's wife testified that, after their children went to bed that

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 318-319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

evening, Lee told her that the victim had told him that some of her friends had been touched sexually and that he was concerned that the victim had also been touched. Lee told his wife that he used a medical book with illustrations of the reproductive system to explain to the victim about keeping herself clean and also talked to her about not letting anyone touch her private parts. Lee's wife became suspicious, because Lee chose to have such a conversation with the victim during the brief interval she was away from the house, rather than involving her, as the little girl's mother, and because he kept returning to the topic. Afterward, Lee's wife asked the victim about the conversation, and the victim told her about what happened, including the digital penetration.

Lee, who is a former gynecologist, took the stand and testified that he examined the victim "as a father and a physician." According to Lee, his wife was worried about the possibility of the victim being abused by older boys. He testified that his wife wanted him to talk with the victim and to examine her because he was a gynecologist and because she was too busy. Lee confirmed that, after locking the bedroom door, he looked at the victim's genitals as she lay back on a chaise lounge in the "frog leg" position, with her feet together and knees apart. He testified that he then took her into the bathroom, showed her anatomical illustrations in a medical book, had her stand with one foot on a stool and pull up on her genital area, used his lubricated fingers to spread the outer labia slightly so he could visually check the victim's hymen using a mirror, and instructed her about keeping herself clean. Lee denied penetrating the victim's vagina with his little finger or in any other way. At the time of this incident, Lee was not a practicing physician, having surrendered his medical license in May 2003 in connection with pleading guilty to four counts of obtaining controlled substances by fraud or theft.[2]

In rebuttal, the State called Maureen Claiborne, a pediatrician who is the medical director of the child abuse team at the Medical College of Georgia.[3] Dr. Claiborne testified from her specialized training and her experience over 18 years of examining thousands of children for evidence of sexual or physical abuse. Dr. Claiborne described a typical genital examination of a young girl. She places the child in the "frog leg" position, reclining on an examination table

[2] "It is unlawful for any person: . . . [t]o acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, subterfuge, or theft[.]" OCGA § 16-13-43 (a) (3).

[3] Lee contends that Dr. Claiborne's expert opinion testimony was "improper and inadmissible." As the trial court found, however, Lee failed to preserve any error for appellate review by failing to object contemporaneously at trial. *Hunter v. State*, 273 Ga. App. 52, 54 (2) (614 SE2d 179) (2005). See Division 3, infra.

216

with the feet together and knees apart. Using gloved hands, she uses a thumb and index finger on either side of the genitals to pull the outer labia slightly apart so that the inner labia and hymen can be inspected. She does not perform internal examinations of preadolescent children and knows of no medical procedure where the doctor's little finger is inserted into a girl's vagina. She testified that, although a lubricant should be used for an internal examination of a sexually mature patient, an external examination of a child is properly and more easily performed without using lubricant. Dr. Claiborne testified that she had never seen or heard of any doctor performing a medical examination of a female's genitals, either child or adult, in the position described by Lee, that is, with the patient standing with one foot on a stool.

1. The jury found Lee guilty of aggravated sexual battery based on evidence that, without the consent of the victim, he intentionally penetrated the victim's vagina with his finger. Lee contends that there is no evidence that he committed the act with the requisite criminal intent. Lee contends that he is entitled to be acquitted because the evidence demands a finding that he did not intend to harm the victim but, rather, that he manually manipulated the victim's genitals in connection with his medical examination of his daughter for evidence of sexual abuse and in the course of a "lesson he was trying to impart [to her] about the importance of female hygiene." According to Lee, he "acted as a concerned parent, worried about the possibility that his child was vulnerable [to sexual abuse] and would be less so if armed with some basic, necessary knowledge about her body."

"A person commits the offense of aggravated sexual battery when he or she intentionally penetrates with a foreign object the sexual organ or anus of another person without the consent of that person." OCGA § 16-6-22.2 (b).[4] By its plain terms, this Code section does not require the State to prove that the defendant intended to harm the victim. On the issue of intent, the State must prove that the defendant's act of penetrating the victim's sexual organ or anus was intentional and that the defendant knew or should have known that the victim did not consent or lacked the capacity to consent. See *Hilliard v. State*, 298 Ga. App. 473, 475 (2) (680 SE2d 541) (2009); *Melton v. State*, 282 Ga. App. 685, 690-691 (2) (b) (639 SE2d 411) (2006). As detailed above, the evidence authorized the jury to find that Lee digitally penetrated the victim's vagina without

---

[4] For the purposes of OCGA § 16-6-22.2 (b), the term "foreign object" means "any article or instrument other than the sexual organ of a person." OCGA § 16-6-22.2 (a). "[A] finger constitutes a 'foreign object' for purposes of this crime." (Citation omitted.) *Johnson v. State*, 276 Ga. 57, 58 (1) (573 SE2d 362) (2002).

her consent.

On the issue of Lee's defense, Georgia law recognizes that a parent has the authority to consent on behalf of the parent's minor child to medical treatment or procedures "by a duly licensed physician." OCGA § 31-9-2 (a) (2).[5] Medical procedures that involve penetrating a minor child's sexual organ or anus with a foreign object are not excluded by the statute. In this case, however, the evidence is undisputed that Lee was not a licensed physician at the time of the act of aggravated sexual battery alleged in the indictment. Pretermitting whether a licensed physician could validly assert such a parental consent/medical procedure defense to a charge of sexual battery of the physician's own child, Lee was not such a licensed physician. Furthermore, contrary to Lee's argument, the evidence does not demand a finding that he touched the victim's genitals as part of a medical treatment or procedure; rather, the evidence authorized the jury to find that, when he penetrated the victim's vagina, he did not do so as part of a medical treatment or procedure but for some other reason. As a result, his sufficiency argument fails.

2. Lee contends that the jury's guilty verdict on the charge of aggravated sexual battery was inconsistent with its not guilty verdicts on three charges of child molestation, which were all based on the same May 11, 2005 incident involving the "examination" and hygiene lesson, and that the trial court therefore erred in accepting the guilty verdict.

The Supreme Court of Georgia abolished the rule that inconsistent verdicts in criminal cases must be reversed, based on its conclusion that the necessary "individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that the courts generally will not undertake." (Citations and punctuation omitted.) *Turner v. State*, 283 Ga. 17, 20 (2) (655 SE2d 589) (2008). The Court recognizes, however,

> an exception to the abolition of the inconsistent verdict rule: when instead of being left to speculate about the unknown motivations of the jury the appellate record makes transparent the jury's reasoning why it found the defendant not

---

[5] In addition to such other persons as may be authorized and empowered, . . . the following person[ ] is authorized and empowered to consent, either orally or otherwise, to any surgical or medical treatment or procedures not prohibited by law which may be suggested, recommended, prescribed, or directed by a duly licensed physician: [i]n the absence or unavailability of a living spouse, any parent, whether an adult or a minor, for his or her minor child[.]

OCGA § 31-9-2 (a) (2).

guilty of one of the charges, there is no speculation, and [the reason for abolishing the rule] does not apply.

(Citations and punctuation omitted.) Id. at 20-21 (2).

Lee contends that the exception applies in this case, but he fails to specify how the appellate record makes transparent the jury's reasoning. Lee contends that the guilty verdict as to the charge of aggravated sexual battery must mean that the jury found that the State proved that he touched the victim's vagina. Lee contends that the child molestation charges were based on the same act of touching the victim's vagina and that, inconsistent with the jury's guilty verdict on the aggravated sexual battery charge, the not guilty verdicts on the child molestation charges must mean that the jury found that the State *failed* to prove that he touched the victim's vagina. Lee fails, however, to show anything in the appellate record that supports his analysis. The verdict form shows no more than "guilty" or "not guilty" as to each count of the indictment.[6] One could as easily conclude that the jury found beyond a reasonable doubt that Lee digitally penetrated the victim's vagina, and rejected his parental consent/medical procedure defense, but did not find beyond a reasonable doubt that he committed the act "with the intent to arouse or satisfy the sexual desires of either the [victim] or [himself]," as required for a child molestation conviction under OCGA § 16-6-4 (a). Because the appellate record does not make transparent the jury's reasoning, the exception to the abolition of the inconsistent verdict rule does not apply in this case. *Artis v. State*, 299 Ga. App. 287, 292 (5) (682 SE2d 375) (2009). Accordingly, this argument presents no basis for reversal. Id.

3. Lee contends that his trial counsel rendered ineffective assistance when he failed to object to the expert opinion testimony of Dr. Claiborne. See Division 1, supra. Lee contends that, with the exception of Dr. Claiborne's testimony, the evidence showed that his conduct constituted a medical examination and that "[i]t is only the testimony of Dr. Claiborne that characterized this incident as sexual abuse."

In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient perfor-

---

[6] Cf. *Turner v. State*, 283 Ga. at 21 (2) (reversing felony murder and aggravated assault convictions, where the verdict form showed that the jury expressly found that the defendant had been justified in firing the shot that killed the victim, and thus returned a not guilty verdict on the charge of malice murder, and that the jury also expressly found that the defendant had *not* been justified in firing the shot that killed the victim, and thus returned a guilty verdict on the charges of felony murder and aggravated assault).

mance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)[.] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [As the appellate court, we] accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003).

Lee contends that Dr. Claiborne's testimony that she knows of no medical procedure where the doctor's little finger is inserted into a girl's vagina was objectionable on the bases that it bolstered the victim's credibility, commented negatively on Lee's credibility, and went to the ultimate question of whether the victim was sexually abused. This is incorrect. Dr. Claiborne's testimony was limited to describing how she and doctors in the medical community generally perform genital examinations of female patients. Her testimony did not touch on whether either Lee or the victim was telling the truth[7] or whether Lee committed aggravated sexual battery on May 11, 2005. Thus, the record does not support Lee's argument that the testimony was objectionable.[8]

Lee contends that Dr. Claiborne's testimony that she had never seen or heard of a doctor examining a female patient's genitals while the patient was standing was objectionable on the bases that she merely served "as a conduit for the opinions of others" and bolstered the State's case as to the ultimate issue. Again, the record does not

---

[7] Under Georgia law, a witness may not opine "that a party or victim is lying or telling the truth, for under OCGA § 24-9-80 credibility is a matter solely within the province of a jury." (Citation, punctuation and footnote omitted.) *Patterson v. State*, 278 Ga. App. 168, 171 (628 SE2d 618) (2006). In particular, "[a]n expert witness may not testify as to his opinion of the victim's truthfulness." (Citation, punctuation and footnote omitted.) Id.

> What is forbidden is expert opinion testimony that directly addresses the credibility of the victim, i.e., "I believe the victim; I think the victim is telling the truth," or expert opinion testimony that implicitly goes to the ultimate issue to be decided by the jury, when such issue is not beyond the ken of the average juror, i.e., "In my opinion, the victim was sexually abused."

(Citations and punctuation omitted.) *Odom v. State*, 243 Ga. App. 227, 228 (1) (531 SE2d 207) (2000).

[8] See *Ogburn v. State*, 296 Ga. App. 254, 257 (4) (674 SE2d 101) (2009) (a police investigator's expert testimony that, in his opinion and based upon his experience and training, a large quantity of pseudoephedrine tablets, aerosol cans of starter fluid, and other items found in the defendant's truck were going to be used for the manufacture or distribution of methamphetamine was not objectionable on the basis that the testimony invaded the province of the jury or improperly expressed an opinion as to an ultimate fact).

support Lee's argument. Dr. Claiborne testified, inter alia, as to her own opinion, as an expert, that a medical examination of a preadolescent girl's genitals should be performed, and typically is performed, while the patient lies on an examining table in the "frog leg" position. This testimony was relevant to the issues raised by Lee's defense and was not objectionable.

Because any objection to Dr. Claiborne's testimony would have been without merit, Lee cannot establish the deficiency prong of his ineffective assistance claim. *Metts v. State*, 297 Ga. App. 330, 339-340 (9) (b) (677 SE2d 377) (2009).

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED SEPTEMBER 24, 2009.

*Peter D. Johnson*, for appellant.
*Rebecca A. Wright, District Attorney, Madonna M. Little, Assistant District Attorney*, for appellee.